<div align="right">NEW-YORK,<br>May, 1819.<br>JACKSON<br>v.<br>GARNSEY.</div>

<div align="center">Order quashed.</div>

---

<div align="center">JACKSON, <em>ex dem.</em> RACHEL MALIN, <em>against</em> GARNSEY.</div>

THIS was an action of ejectment, brought to recover part of lot No. 48. in township No. 7. in the second range of townships, in the county of *Ontario.* The cause was tried before the late Chief Justice, at the *Ontario* circuit, in *June,* 1818.

The lessor of the plaintiff claimed as grantee of *Amos Garnsey,* of whom the defendant was the son and heir. The execution and loss of the original deed were proved; and a record of the deed, by which it appeared, that it was dated the 17th of *August,* 1793, was given in evidence as a copy, the acknowledgment being informal and insufficient. One of the subscribing witnesses to the deed, testified, that at the time it was executed, one hundred dollars in silver were paid to the grantor by the plaintiff's lessor, in the presence of *Jemima Wilkinson,* of whose society both the grantor and the plaintiff's lessor were members, in part of the consideration, and that the grantor admitted, that other sums of money had been previously paid to him, and acknowledged himself satisfied. Another subscribing witness testified, that it was agreed between the parties thereto, at the time of executing the deed, that if the grantor should refund the consideration mentioned therein, the land should be reconveyed to him, if necessary, or the deed given up. It appeared, that about the time of the conveyance, a judgment had been recovered by one *Hatheway* against the grantor.

<div align="right" style="font-size:small"><em>A party making a voluntary conveyance, and his heirs, are bound by it; and in an action of ejectment by the grantee against the heir of the grantor, the latter cannot set up the want of consideration in bar of the recovery. Nor can he take advantage of a judgment against himself, under which the land conveyed by his ancestor, had been sold, as an outstanding title to defeat the grantee's action, as the sale could only operate upon the interest which he had in the land, which was nothing more than a naked possession.</em></div>

A witness on the part of the defendant, stated, that after the grantor had received the money, he saw him pass round the house to another door, where he was met by *Jemima*, and delivered the money to her. This the witness said, took place about 14 or 16 years before the trial. The admissions of *Rachel* the lessor, and of *Jemima*, were proved, that they had taken the conveyance out of kindness to *Amos Garnsey*, the grantor, and to prevent *Hatheway* from getting the land, and that she, the plaintiff's lessor, was willing to give up the deed.

The defendant also produced in evidence a record of a judgment in an action of trespass, in which the defendant in this suit was plaintiff, and one *Doolittle*, defendant, in the Court of Common Pleas of *Ontario* county, which was filed, and docketted on the 23d of *April*, 1817, and by which the defendant therein recovered judgment against the plaintiff, for 30 dollars, and 89 cents, costs, and under which the land in question had been sold and conveyed by the sheriff of the county of *Ontario*, to one *Dorman*.

A verdict was taken for the plaintiff, subject to the opinion of the Court, on the following questions: 1. Whether a conveyance of land to avoid the payment of debts, is a bar to the heir at law of the grantor. 2. Whether such conveyance can affect a judgment for costs obtained subsequently, against the heir at law of the grantor.

*Sill*, for the plaintiff. The deed in this case was given for a valuable consideration. All the other evidence was introduced to show, that the deed was fraudulent. But, even if this were a *voluntary* conveyance, it is valid as between the parties themselves, and is binding upon the grantor and his heirs; it is void only against creditors. Besides, *S. Doolittle* is not a *creditor* within the meaning of the statute. (1 *N. R. L.* 75. 10 sess. ch. 44. 27 *Eliz.* ch. 4.) To claim the benefit of the statute, he must be a creditor of the grantor, or person making the voluntary conveyance. If this was a voluntary conveyance, and, therefore, void under the statute, then nothing descended to the heir of the grantor, and so there was nothing on which the judgment and execution could attach. The counsel cited, *Rob. Fraud. Conv.*

378. 641, 642. 646. 649.   1 *Vernon,* 45. 100.   *Cro. James,* NEW-YORK,
270.   7 *Mass. Rep.* 354.   7 *Johns. Rep.* 161.                        May, 1819.

JACKSON
v.
GARNSEY.

*E. Williams,* contended, 1. That the deed, under the circumstances, created a *resulting trust* in favour of the grantor, which descended to his heir, and was liable to an execution.

2. That if it was not a resulting trust, and descended to the heir of the *cestui que trust,* it was, at most, but a *mortgage;* and the mortgagor have been permitted to remain in possession so many years, the legal presumption was, that the debt for which the security was given, had been paid.

3. The plaintiff's deed never having been recorded, the defendant can set up the deed to *Dorman,* as an outstanding title.

*Sill,* in reply, insisted, that there was no evidence in the case to support the position that there was a resulting trust; nor was there any evidence of a mortgage. The title in *Dorman,* if any, is not such a one as could be set up to defeat that of the lessor.

SPENCER, Ch. J. delivered the opinion of the Court. It has been argued, 1. That the deed created a resulting trust in favour of the grantor, as the consideration money was his.

2. That it was a mortgage, as the grantor was to receive back the land, and the objects for which it was given have been effected.

3. That the mortgagor having been permitted to remain in possession ever since 1793, the debt is to be deemed as paid.

4. That the outstanding title of *Dorman* may be set up to defeat a recovery.

The deed under which the lessor of the plaintiff claims, though purporting to be dated on the 10th of *August,* 1793, as would seem from some of the testimony, was actually delivered about 14 or 16 years before the trial. I do not, however, consider the time of the execution of the deed to be material, as there was no objection to the plaintiff's reco-

NEW-YORK, very, on the ground that there had been an adverse posses-
May, 1819. sion.   Notwithstanding the peculiar features of this case,
JACKSON   and the probable hardship on the defendant, as the heir of a
v.   person once seised, I am compelled to say, that I perceive
GARNSEY.   no legal objections to the plaintiff's recovery.

There is nothing in the case to render this a resulting trust in favour of the grantor.   The deed may have been, and probably was, executed for the purpose of defrauding a creditor of the grantor, and without any other consideration than one merely colourable; yet, as between the parties, the deed, if merely voluntary, under the expectation that it would be surrendered back, or that a reconveyance would be made, was binding on the parties, and their representatives.   The *statute of the* 27th *Eliz.* ch. 4. has received but one construction in this respect.   The party making a voluntary conveyance, and those claiming under him, are as much bound, as if the most valuable consideration had been given, for that statute has interposed only in favour of purchasers for valuable consideration.   As between the parties, they are expressly excluded from its operation, and are left as they stood at the common law; and before the statute, the heir could never set up his title against the voluntary alienee of his ancestor, nor call upon him for contribution, where both were amenable to the creditors of the ancestor as ter-tenants; nor will courts of equity assist the party making a voluntary conveyance, or his representative claiming as such, by setting them aside. (*Roberts on Fraudulent Convey-ances*, 646, 647.   7 *Johns. Rep.* 161.   1 *N. R. L.* 75.)

The case furnishes no pretence to consider the deed from *Amos Garnsey* to the lessor, as a mortgage, and it is useless to discuss the point.

If it was competent to the defendant to set up an outstand-ing title, in his defence, *Dorman's* is no title.   He claims under a judgment obtained against the defendant for a de-mand, in which the ancestor had no concern, and for which he was not responsible; and the judgment could operate only on the estate of the defendant.   He had no interest in the pre-mises, beyond a naked possession, and nothing but his pos-sessory interest could be sold; the sale, therefore, could

not affect, or defeat the title of the lessor derived from the ancestor.

Judgment for the plaintiff.